```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                                     :
DENNIS SUMLIN, on behalf of himself and all others                   :
similarly situated,                                                  :
                                                                     :
                        Plaintiff,                                   :      24-cv-8448 (LJL)
                                                                     :
        -v-                                                          :      OPINION AND ORDER
                                                                     :
NEW YORK BEER CO., LLC,                                              :
                                                                     :
                        Defendant.                                   :
                                                                     :
---------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/18/2025

LEWIS J. LIMAN, United States District Judge:

Plaintiff Dennis Sumlin ("Sumlin" or "Plaintiff"), on behalf of himself and all others similarly situated, brings claims against Defendant New York Beer Co., LLC ("New York Beer" or "Defendant") under the Americans with Disabilities Act ("ADA"), the New York City Human Rights Law ("NYCHRL"), and the New York State Human Rights Law ("NYSHRL"). Dkt. No. 1 ("Complaint" or "Compl."). Plaintiff now moves for a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). Dkt. No. 17.

For the following reasons, the motion for default judgment is granted.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint and are accepted as true for purposes of this motion.

Plaintiff is a resident of New York County, New York. Compl. ¶ 15. He is legally blind. *Id.* ¶ 16. Like many visually-impaired people, Plaintiff uses screen reading technology to navigate the internet. *Id.* ¶ 20. A screen reader reads out a website's information to its user. *Id.*

A website must have "alternative text" embedded in graphics so that the screen reader can describe the image to its user.  *Id.* ¶ 21.

The Defendant, New York Beer Co., LLC, controls and operates a website with the address jacobspickles.com (the "Website").  *Id.* ¶¶ 24, 36.  The Website is connected to Jacob's Pickles, a Southern-inspired restaurant which is known for its comfort food, including items like homemade pickles, fried chicken, and biscuits.  *Id.* ¶¶ 25–26.  One of Jacob's Pickles' locations is on the Upper West Side of Manhattan.  *Id.* ¶ 37.  From the Website, a patron can view menus, order food, get information about restaurant locations, book private events, purchase "Jacob's Pickles" merchandise, and make reservations.  *Id.* ¶ 26.

On October 25, 2024, Plaintiff attempted to access the Website with his screen reader.  *Id.* ¶ 36.  He browsed the Website to explore Jacob's Pickles' menu and get a sense of the dishes it offered to make a reservation.  *Id.*  As he did so, he noticed that the Website offered branded merchandise.  *Id.*  He attempted to add a branded T-shirt to his cart.  *Id.*  However, he encountered accessibility issues, "such as external links opening in new windows without notification, elements that could not be focused on using the Tab key, and ambiguous links that did not clearly indicate their destination or function."  *Id*.  These accessibility issues kept Plaintiff from exploring and shopping on the Website.  *Id.*  Plaintiff is still interested in Defendant's services and hopes to visit Jacobs Pickles' physical locations in the future, specifically the location on the Upper West Side.  *Id.*  He will also visit the Website again as soon as Defendants ameliorate the accessibility issues.  *Id.* ¶ 37.

## PROCEDURAL HISTORY

On November 6, 2024, Plaintiff commenced this action on behalf of himself and all others similarly situated.  Dkt. No. 1.  The Complaint and Summons were served on Defendant

through the New York Secretary of State on November 25, 2025, and proof of service was filed on December 1, 2024.  Dkt. No. 6.  Defendant has not appeared.

On April 16, 2025, Plaintiff filed a proposed Clerk's Certificate of Default pursuant to Local Civil Rule 55.1.  Dkt. No. 13.  On April 16, 2025, the Clerk's Certificate of Default was entered.  Dkt. No. 15.  On April 18, 2025, Plaintiff moved for a default judgment.  Dkt. Nos. 16–17.  Plaintiff served the motion for default judgment on the Defendant the same day through the Secretary of State.  Dkt. No. 18.   Defendant has not appeared and has not filed a response to the motion.

## LEGAL STANDARD

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment."  *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  First, when a party against whom relief is sought has failed to plead or otherwise defend, and such failure is demonstrated by affidavit, the clerk must enter the default.  Fed. R. Civ. P. 55(a).  This simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *Mintable PTE Ltd. v. Mintology, Inc.*, 2024 WL 3454825, at *4 (S.D.N.Y July 18, 2024) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011)).  The second step, entry of default, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)."  *Id.*  Entry of default depends on whether Plaintiff's allegations establish liability under law.  *See id.*

In evaluating a motion for default judgment, the court accepts the plaintiff's well-pleaded factual allegations as true, except those relating to damages.  *Maldonado v. Loxton, Inc.*, 2023 WL 8663464, at *4 (E.D.N.Y. Dec. 15, 2023) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).  "The Court must draw all reasonable

inferences in favor of the movant." *Esquivel v. Lima Rest. Corp.*, 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). However, the movant's factual allegations must be sufficient to state a claim; the Court need not accept legal conclusions couched as facts. *See Priestley*, 647 F.3d at 506 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When liability is established, the movant must "substantiate its claim for damages with evidence to prove the extent of those damages." *Kelly Toys Holdings, LLC v. Airpods Pro Store*, 2022 WL 2801077, at *6 (S.D.N.Y. July 18, 2022).

## DISCUSSION

### I. ADA Claim

To state a claim under the ADA, a plaintiff must allege "(1) [that] he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Brown v. Good Friend Deli & Tobacco Corp.*, 2021 WL 2021 WL 5822232, at *5 (S.D.N.Y. Dec. 7, 2021) (citing *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008)).

The first and third elements of an ADA claim are clearly met. Blindness is a disability covered by the ADA. *See* 42 U.S.C. § 12102(2)(A). In addition, Defendant has denied Plaintiff the opportunity to benefit from the Website on account of his disability, in violation of the ADA. *See* 42 U.S.C. § 12182(b)(1)(A)(i). Defendant failed to provide access necessary for Plaintiff, as a blind person, to navigate the Website and purchase the same merchandise on the Website that a seeing person can purchase. Compl. ¶ 36. Taken as true, these facts plausibly show that Defendant discriminated against Plaintiff on account of his disability. *See Thorne v. Formula 1 Motorsports*, 2019 WL 6916098, at *3 (S.D.N.Y. Dec. 19, 2019); *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 443 (S.D.N.Y. 2018).

The second element of an ADA claim concerns whether Defendant's website is a place of public accommodation. It is a matter of judicial controversy, including in this District, whether a stand-alone website unconnected to a brick-and-mortar location qualifies as a place of public accommodation. *See Chalas v. Pork King Good*, 673 F. Supp. 3d 339, 343 (S.D.N.Y. 2023) ("Neither the Supreme Court nor the Second Circuit have addressed whether a stand-alone website is a place of public accommodation and other circuit courts are divided on the question."); *Fernandez v. Vanilla Chip*, 2025 WL 1151475, at *5 (S.D.N.Y. Apr. 18, 2025).[1] However, the Website here is connected to a brick-and-mortar location, specifically, the restaurant Jacob's Pickles. Compl. ¶¶ 17, 37. The Court follows the judicial consensus in this District, derived from Second Circuit precedent, that such a website qualifies as a place of public accommodation.

In *Pallozzi v. Allstate Life Insurance Co.*, the Second Circuit held that "an entity covered by Title III is not only obligated by the statute to provide disabled persons with physical access, but is also prohibited from refusing to sell them its merchandise by reason of discrimination against their disability." 198 F.3d 28, 32 (2d Cir. 1999). *Pallozzi* concerned the underwriting practices of insurance companies. *See id.* at 31. An insurance office is a place of "public accommodation" under Title III, and the Circuit reasoned that "Title III's mandate that the

---

[1] The First and Seventh Circuits have held for the purposes of the ADA, a public accommodation does not require a physical space. *See Guerrero v. Ellusionist.com, Inc.*, 2023 WL 3847402, at *3 (S.D.N.Y June 6, 2023) (citing *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New Eng., Inc.*, 37 F.3d 12, 19 (1st Cir. 1994); *Doe v. Mut. Of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999)). The Eleventh Circuit has specifically held that websites are not places of public accommodation, even with a nexus to a brick-and-mortar location. *See Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1277 (11th Cir. 2021). The Third, Sixth, and Ninth Circuits have taken an intermediate approach, which requires that there be a nexus between the discriminatory conduct and a physical location. *See Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612–13 (3d Cir. 1998); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1011 (6th Cir. 1997); *Robles v. Domino's Pizza, LLC,* 913 F.3d 898, 905 (9th Cir. 2019).

disabled be accorded full and equal enjoyment of the goods, [and] services . . . of any place *of public accommodation*, suggests . . . that the statute was meant to guarantee [plaintiffs] more than mere physical access" to insurance offices. *Id.* at 32 (emphasis added) (citations omitted). Plaintiffs were also entitled to have access to the goods and services offered at such offices. *See id*. The Circuit rejected the defendant's reading of § 12182(a), which would have limited Title III's scope to prohibit discrimination only in those cases where those goods or services are consumed on-site. *See Del-Orden v. Bonobos*, 2017 WL 657902, at *11 (S.D.N.Y. Dec. 20, 2017) (citing *Pallozzi*, 198 F.3d at 33).

*Pallozzi* did not hold that websites are places of public accommodation. *See Sookul v. Fresh Clean Threads, Inc.*, 754 F. Supp. 3d. 395, 407 (S.D.N.Y. 2024) (noting that *Pallozzi* is "not a case about the antecedent question of whether a place of accommodation can be a business without physical premises"). Instead, *Pallozzi* rested on the fact that insurance offices are public accommodations, and it held therefore that Title III regulates "the sale of insurance policies in insurance offices." *Pallozzi*, 198 F.3d at 33; *see Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 n.8 (2d Cir. 1999) (leaving open the issue of whether a claim under Title III may be based on an insurance policy with no nexus to a physical office). The question whether a business is a public accommodation in the first instance is different from the question whether, assuming a business is a public accommodation, the goods and services offered at that location must be accessible.

However, "many district courts in this Circuit have looked to *Pallozzi* for guidance" on the issue whether Title III applies to websites. *Fernandez*, 2025 WL 1151475, at *5; *see, e.g. Del-Orden*, 2017 WL 657902, at *8; *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 394 (E.D.N.Y. 2017). These courts reason that because *Pallozzi* held that the ADA guarantees

more than mere physical access, its holding "could be extended to a company's refusal to sell a disabled person its merchandise on the Internet and, by extension, imposing barriers that have essentially the same effect. Otherwise, a company could freely refuse to sell its goods or services to a disabled person as long as it did so online rather than within the confines of a physical office or store." *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 571 (D. Vt. 2015). This reasoning especially makes sense as applied to a website with a nexus to a physical store or location. If a business would need to sell an accessible insurance policy to a customer who walks into a store, it makes no sense for a business to be able to avoid the ADA by selling the exact same customer an inaccessible policy online. Thus, courts in this Circuit have consistently held that a website should be considered a public accommodation under the ADA "when the [web]site in question serves as an adjunct to a brick-and-mortar business." *Martinez v. MyLife.com, Inc.*, 2021 WL 5052745, at *3 (E.D.N.Y. Nov. 1, 2021) (quoting *Winegard*, 554 F. Supp. 3d at 174); *see Fernandez,* 2025 WL 1151475, at *5; *Del-Orden*, 2017 WL 657902, at *8; *Andrews*, 268 F. Supp. 3d at 394; *Thorne*, 2019 WL 6916098, at *2.[2]

Such a conclusion also follows independently from principles of statutory interpretation. "When interpreting a statutory provision, we begin with the language of the statute." *Zepeda-Lopez v. Garland*, 38 F.4th 315, 210 (2d Cir. 2022) (citing *Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013)). The plain meaning of "place" is ambiguous as to whether a website should be considered part of a place of public accommodation. The list of public accommodations in

---

[2] Some courts in this Circuit have held that even standalone websites—those without ties to a physical store location—are public accommodations for the purposes of Title III. *See, e.g.*, *Romero v. 88 Acre Foods, Inc.*, 580 F. Supp. 3d 9, 19 (S.D.N.Y. 2022); *Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 386 (S.D.N.Y 2022). Others have come to the opposite conclusion. *See Winegard v. Newsday LLC*, 554 F. Supp. 3d 173, 174 (E.D.N.Y. 2021); *Mejia v. High Brew Coffee Inc.*, 2024 WL 4350912, at *6 (S.D.N.Y. Sept. 30, 2024).

42 U.S.C. § 12181(7) includes mostly entities, such as inns, restaurants, bars, stores, schools, parks, gyms, and spas, that are generally thought of as physical locations. But the list also includes "travel services," which do not require the existence of a physical structure. *See Del-Orden,* 2017 WL 657902, at *8 (citing *Carparts,* 37 F.3d at 19). And the text does not clarify whether an online aspect of a restaurant, school, or store should be considered part of the entity or separate from it. "The statutory text . . . of the [ADA] does not cleanly resolve whether Title III applies to commercial websites." *Id*.

If the text of a statute is ambiguous, courts must consider the statute as a whole and interpret it in a way that effectuates its purpose. *See Connecticut ex rel. Blumenthal v. U.S. Dept. of Interior*, 228 F.3d 82, 89 (2d Cir. 2000). The ADA's purpose is to "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "invoke the sweep of congressional authority" to address discrimination. 42 U.S.C. § 12101(b). As a remedial statute, the ADA must be broadly construed to effectuate that purpose. *Cruz v. JKS Ventures, Inc.*, 2024 WL 814563, at *6 n.6 (S.D.N.Y. Feb. 26, 2024) (citing *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 160 (2d Cir. 2013)). Even though the ADA became law in 1990—long before the advent of the internet—Congress intended that the ADA would keep pace with rapidly changing technology. *See Tavarez*, 623 F. Supp. 3d. at 369. "Today, few areas are more integral to the economic and social mainstream of American life than the Internet's websites." *Fernandez*, 2025 WL 1151475, at *8 (quoting *Del-Orden*, 2017 WL 6547902, at *9) (internal quotation marks omitted). Therefore, limiting the definition of public accommodation to physical places, especially as the world has significantly moved online, would frustrate Congress' intent. *See Tavarez*, 623 F. Supp. 3d. at 369. As

8

physical businesses move features like their reservation systems, menus, or payment processes online, the protections of the ADA would slip away.

Here, the Website, jacobspickles.com, is clearly tied to a place of public accommodation—a restaurant.  The ADA is implicated when a website operates "in sufficiently close tandem with a conventional place of public accommodation . . . that access barriers to the website serve as access barriers to that place of public accommodation." *Del-Orden*, 2017 WL 6547902, at *7.  Patrons can get information about Jacob's Pickles on the Website, order food, make reservations, and order merchandise.  Compl. ¶ 26.  The Website is sufficiently linked to the restaurant that the barriers on the Website also serve as barriers to the restaurant.  *See Del-Orden*, 2017 WL 6547902, at *11 (holding that a retailer's website was sufficiently linked to its physical locations when the website included a store locator, store phone numbers, hours of operation, and offers of in-person services).

Because (1) Plaintiff's blindness qualifies as a disability under the ADA, (2) the Website is a place of public accommodation, and (3), Defendant denied Plaintiff full and equal enjoyment of the Website on account of his disability, Plaintiff has stated a claim under the ADA.

### II.     NYSHRL

"A claim of disability discrimination under the [NYSHRL] is governed by the same legal standards as govern federal ADA claims." *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 n.3 (2d. Cir. 2006) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir.2000).  As Plaintiff states a claim under the ADA, he also states a claim under NYSHRL and is entitled to the damages enumerated in Section 40.

### III.    NYCHRL

In New York City, it is an "unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or

employee of any place or provider of public accommodation . . . because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation." N.Y.C. Admin. Code § 8-107. The word "provider" clearly covers a website; "even if one could quibble with whether the website is a 'place,' it undoubtedly 'provides' to the public "accommodations, advantages, services, facilities or privileges." *Andrews*, 368 F. Supp. 3d at 400. "Given the court's ruling that the plaintiff has stated a claim under the ADA and the NYSHRL—the 'floor' of protection provided by the NYCHRL—he has also stated a claim under the NYCHRL." *Id.* at 401.

## IV. Relief

### 1. Injunctive Relief

Plaintiff requests a preliminary and permanent injunction requiring Defendant to make the website accessible. Dkt. No. 1 at 28. On a motion for default judgment, a court may issue an injunction if the moving party demonstrates that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction. *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008).[3] The ADA creates a private right of action for injunctive relief, so the first prong is satisfied. *See* 42 U.S.C § 12188(a)(2). To meet the second prong, in order "[t]o obtain a permanent injunction, [the requesting party]

---

[3] The party must also have constitutional standing to seek an injunction, that is, the plaintiff must establish that "she is likely to be harmed again in the future in a similar way." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)). The Court finds this requirement to be satisfied here because Plaintiff alleges that he lives in the same county as the physical restaurant, Dkt. No. 1 ¶¶ 15, 37, that he enjoys visiting restaurants and appreciated specific aspects of Defendants' offerings, *id.* ¶¶ 36–37, and that he sought to make a reservation and would like to visit a particular physical location, *id.*; *see Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013) (holding that intention to return was plausibly shown when the plaintiff pled that he frequented diners in his neighborhood often, lived nearby, and would frequent the diner if he was able to access it).

10

must demonstrate (1) actual success on the merits and (2) irreparable harm." *Id.* (citing *Gucci Am., Inc. v. Duty Free Apparel*, 286 F. Supp. 2d 284, 290 (S.D.N.Y. 2003)).  The above discussion establishes Plaintiff's success on the merits.  *Duty Free Apparel,* 286 F. Supp at 290.  In addition, Plaintiff continues to suffer irreparable harm because his continued inability to use the website cannot be remedied by monetary damages.  *See Dunbar v. Buddha Bodai Two Kosher Vegan Rest.*, 2020 WL 12863802, at *9 (S.D.N.Y. Nov. 24, 2020).

Injunctive relief under 42 U.S.C § 12188(a)(2) is intended to "make [defendant's] facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter."  42 U.S.C § 12188(a)(2).  When a plaintiff's submissions do not specify what changes are needed to make a facility readily accessible or fail to adequately support the injunctive relief the plaintiff seeks, a court may decline to issue a "broad, imprecise" injunction that simply demands the facility comply with the law.  *Dunbar*, 2020 WL 12863802, at *7; *see id.* (expressing concern that such an order "may not be capable of being enforced"); *Sarwar v. Zillion Mgmt., Inc.*, 2022 WL 1238456, at *3 (N.D.N.Y. Apr. 27, 2022) (declining to issue injunction ordering hotel to come "into compliance" with the ADA, which "could not be meaningfully enforced," and requiring plaintiff to "provide a specific basis for the relief he seeks"); *Pompey v. 23 Morgan II, LLC*, 2017 WL 1102772, at *4 (E.D.N.Y. Feb. 13, 2017) (declining to issue an injunction when plaintiff failed to provide "basic facts to support" that injunctive relief was appropriate, and submitted no evidence or affidavits).

Here, Plaintiff requests an injunction "requiring Defendant to take all the steps necessary to make its website . . . into full compliance with the requirements set forth in the ADA, and its implementing regulations."  Compl. at 28.  Although this request is vague, Plaintiff has also submitted the report of an expert consultant who audited Defendant's website for ADA

11

compliance. Dkt. No. 4. The report contains an exhibit listing forty specific issues that must be fixed for the Website to come into compliance with WCAG 2.0, a standard guideline for accessibility. Dkt. No. 4 at 14–20; *see* Compl. ¶ 23; *Andrews*, 286 F. Supp. 3d at 386 (E.D.N.Y. 2017) ("[T]he guidelines that the parties have chosen to adopt, the WCAG 2.0 Level AA, appear to be nearly universally accepted."). The issues fall into general categories such as lack of alternate text, improper headings that make it difficult for assistive technologies to interpret the website, and failure to permit navigation through the keyboard alone, which are also identified in Plaintiff's Complaint. Dkt. No. 4 at 2–3. The report supports the need for an injunction and allows an injunction to be issued with specificity.

The Court will issue an injunction requiring Defendant to resolve each of the accessibility issues identified in the expert report submitted by Plaintiff.

    **2.  Damages**

Damages are also available to plaintiffs under the NYSHRL and NYCHRL, but even when default judgment is based on a party's failure to defend, plaintiff still has the burden to prove damages with a reasonable certainty. *See Thorne*, 2019 WL 6916098, at *3 (citing *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (internal quotations omitted)). Here, Plaintiff has failed to establish any damages besides the "bare fact" of discrimination. *Id*. In such cases, an award of $1,000 is generally deemed sufficient to compensate plaintiffs under the NYCHRL and NYSHRL together. *Id*. (citing *Kreisler v. Second Ave. Diner Corp.*, 2012 WL 3961304, at *14 (S.D.N.Y 2011); *see also Brown v. 3700 Deli & Grocery Inc.*, 2021 WL 289349, at *2 (S.D.N.Y. Jan. 27, 2021). The Court awards Plaintiff damages of $1,000.

### 3. Attorney's Fees

The ADA and NYCHRL allow for awards of attorneys' fees. *See* 42 U.S.C. § 12205; N.Y.C. Admin. Code § 8-502(g). Plaintiff must file any motion for fees within thirty days of this order.

## CONCLUSION

The motion for default judgment is GRANTED. Plaintiff may file a motion for fees within thirty days of this order.

Defendant is ordered to resolve each of the accessibility issues identified in the expert report submitted by Plaintiff as soon as reasonably practicable. This injunction shall not be interpreted to require any actions that constitute an undue burden as defined in Title III of the ADA.

The Clerk of Court is respectfully directed to close Dkt. No. 17.

SO ORDERED.

Dated: June 18, 2025
      New York, New York

                                       LEWIS J. LIMAN
                                       United States District Judge